By the Court, Jones, J.
The daughter of the plaintiff in this case, on her cross-examination, had been interrogated • as to being in a supper room with one Campbell and as to acts of intimacy between her and said Campbell and one Dougherty. Afterwards the defendant called, on his behalf, *150 Campbell and Dougherty and interrogated them as-to those matters concerning which the daughter had been questioned. This was excepted to. The objections now urged, to its admissibility, are, 1st. That the evidence was immaterial. 2d. That the defendant having interrogated the daughter on the subject was concluded by her answer. 3d. That evience of specific acts of unchastity was incompetent. The objections are all clearly untenable. Evidence of unchastity, loose conduct, and bad character of the daughter is always admissible, in mitigation of damages. (Stark. on Ev. vol. 2, p. 991. Saunders on Pl. and Ev. vol. 2, p. 785.) Such unchastity and loose conduct may always be shown by proving particular instances thereof. The defendant was not concluded by the answers of the daughter. A party is concluded by the answers given on cross-examination only as to such matters as are merely collateral, and not as to those which are pertinent to the issue. (Bok v. Vincent, 12 Abb. 137. Newton v. Harris, 6 N. Y. Rep. 345.) As this defendant had a legal right to prove in mitigation of 'damages matters showing the unchastity, loose conduct and bad character of the daughter, they were pertinent to the issue.
The next exception presented for consideration is to that portion of the charge wherein the judge charged that “In order to constitute seduction the defendant must use insinating arts to overcome the opposition of the seduced, and must by his wiles and persuasions, without force, debauch her.” The definition is strictly accurate. This is the ordinary meaning and acceptation of the word “ seduce.” I have been unable to find that the law attaches any different meaning to it. Indeed it is, substantially, the definition given in BurriH’s Law Dictionary. The bare fact of criminal connection does not of itself constitute seduction. It may be the result of a mere bargain, an immoral one, it is true, incapable of enforcement,, but still a bargain, the proposition leading to which may have emanated from the woman, or which she-mayhave entered into coolly and deliberately, *151 well knowing the consequences, in consideration of obtaining some pecuniary or other coveted advantage thereby. Such a criminal intercourse does not fall within the ordinary and popular definition and acceptation of the term “ seduce,” and the law has ascribed a different definition to it. Again; the criminal connection may have been compelled by force. To designate such an act, the law uses the term rape, not seduction.
The next exception to the charge, as stated in the ease, is to that portion wherein the judge charged, “ If the testimony of the defendant be true there can be no doubt he was not guilty of seducing her, and the plaintiff cannot recover.” The words “ and plaintiff cannot recover,” are not in the charge as given. The balance of this portion of the charge is, under the evidence, strictly correct.
The next exception to the charge is to that part of the charge wdierein the judge charged the jury “ that they had a right to consider the evidence offered by the defendant, tending to prove the previous unchastity of the plaintiff’s daughter.” The exception, as taken,' is not well founded. The jury clearly had a right to consider that evidence in mitigation of damages. But the judge charged that the jury had a right to consider it in connection with other evidence as bearing on the question of actual seduction; and perhaps the exception may be considered as extending to this. Even if so, the charge, under the evidence in this case, was correct. There being a question as to whether the defendant did seduce the daughter, raised by the contradiction between the testimony of the daughter and the defendant, the evidence of previous unchaste conduct might well be considered as tending to corroborate the defendant’s evidence.
From the points of the plaintiff’s counsel he would seem to be laboring under the impression that his case is in a shape to raise two questions not before adverted to, viz: 1st. That the fact of a criminal intercourse is of itself suffi *152 cient to justify a recovery of damages beyond a mere compensation for loss of service and a reimbursement for expenses incurred; or 2d. That it is sufficient to justify at least a recovery for such loss and expenses. In this, I think, he is in error. All the portions of the charge excepted to are correct. The difficulty is, the charge does not go far enough; it neither affirms nor denies either of these propositions. To bring the question up, the counsel should have called the attention of the court to them by specifically requesting him to charge the affirmative of them,' and excepting, in case of refusal so to do (Waugh v. Waugh, 28 N. Y. Rep. cited from p. 109.)
But suppose we consider these questions as if they were properly brought up. Allowing a plaintiff in this class of actions to recover damages other than to compensate for the loss of service and to reimburse such expenses as the plaintiff was under a legal liability to incur, is an anomaly in the law. This anomaly has thus far covered those eases only where the female was seduced, (as that term is above defined,) by the defendant.. The anomaly had its origin in detestation of the act of the man, who, after having by his arts, guile and persuasions lured a young, virtuous, inexperienced girl from the path of virtue, casts her off as a thing of shame, plunging her into the deepest of misery, and inflicting the greatest of all injuries on her parents and family. As the commission of the act of connection was with her consent, she could not, under the rules of law, sustain an action in her own name. The courts, then, with the view of punishing so outrageous an act, which otherwise would go unwhipt of justice, allowed the master, when a female servant had thus been seduced, to recover exemplary damages in an action brought to recover for the loss of the servant’s services. Following out the same doctrine, exemplary damages were allowed in all cases where the defendant, by his arts, persuasion and guile had induced the female to consent to the particular act of connection, although she may have previously been unchaste, or guilty of loose and immodest *153 conduct; but as it necessarily followed that the seduction of one previously unchaste, or guilty of loose and immodest conduct, would not be as outrageous, as that of one pure and virtuous, the defendant was allowed to give the matter in evidence. The practical effect of this was to proportion the exemplary damages to the nature and character of the seductive arts used, and the previous character and conduct of the seduced; in some instances the damages being merely nominal.
As the action is founded on the relation of master and servant between the plaintiff and the seduced, and the loss of service sustained by the master through the act of the defendant, the exemplary damages being simply a superstructure upon this foundation, it followed that if the foundation was destroyed the superstructure fell with it. Therefore if either the relation of master and servant did not exist, or the master sustained no loss of service, the whole action fell, and no matter how outrageous the conduct of the defendant, no damages could be recovered against him. It will therefore be seen that the means of punishment devised by the courts was inadequate to meet all cases. It, perhaps, is to be regretted that the courts were, by their indignation and detestation of a defendant’s arts, led, against all principle, to fasten on this class of actions the doctrine that exemplary damages could be recovered. They have frequently been obliged to resort to flimsy pretexts to render the doctrine applicable to particular cases, and, after all, there are many cases which they have been unable, by any pretext or fiction, thus far discovered or announced, to subject to the doctrine.
If the courts had not interfered at all, there can be but little question that legislative enactments would have furnished a remedy based on rational principles, and covering all cases deserving to be provided for. As, however, the doctrine, on which exemplary damages are given in these actions, is, that otherwise the defendant would escape from *154 merited punishment, since the seduced could bring no action, it is clear it has no application where the connection was had by force, for in that case the woman would have a right of action for assault and battery, the forcible connection being part of the battery, and rendering it an exceedingly aggravated one.
It is equally clear the doctrine has no application, when the connection was had without the use of force or seductive arts. Exemplary damages are given, not to punish for the mere act of connection, but for the disgraceful, dishonorable and outrageous conduct of a man in inducing a female to throw down the barriers of repugnance, modesty and virtue, stifle the monitor of morality, and consent to-an act, the inevitable result of which is degradation.
In closing this branch of the case, I refer to a few extracts from an opinion of that eminent, discriminating jurist, Chief Justice Bronson. (Bartley v. Richtmyer, 4 N. Y. Rep. 38.) “ The principle is the same as it is in an action for beating a servant, by means of which the master loses his services; In neither case does the act done to the servant give any right of action to the master, unless it results in an injury to him. For the beating itself the servant may sue, and so she might, for the debauching, if it were not for her consent. The principle is plain enough; but it has, to some extent, been lost sight of by the courts in their zeal to punish the defendant, and do something to heal the wounded feelings of others. It is obvious from the nature of the case that the master ought not, in point of principle, to recover any thing more than a compensation for the pecuniary loss which he has sustained, and such was formerly the rule in this action, as it is still where the master sues for the battery of a servant. But it is now settled that a father may recover exemplary damages for the seduction of his daughter. And verdicts for exemplary damages have also been allowed in a few instances, where the action was not brought by the father. But this error has not yet become *155 bo inveterate as to be beyond the reach of judicial correction.”
Again, he says: “It is worthy of grave consideration whether it would not be well for the legislature to restore the old rule by limiting the recovery to the value of the services lost, and the amount of the expenses incurred in consequence of the injury. Parents would not be less watchful over their daughters for knowing that they could not make a pecuniary profit by their dishonor; and females would not be less chaste, if they knew that disgrace and shame, without any reward, would certainly follow transgression.” “The seducer deserves the severest censure; but if he is charged with any thing more than the pecuniary damages resulting to the parent, it is well worthy of consideration whether the matter should, not be regarded as a public, rather than a private wrong. I cannot yet consent to the modern doctrine that woman’s virtue should be fenced about by penal statutes If it has no higher and: more holy shield, it certainly will not withstand the trial. If such laws were not intended for good, I should regard them as an insult to the sex. There is nothing in this particular case which should tempt us to amend the law, if we had a right to do it, to uphold the verdict. Although Gitty was a witness on the trial there is not a particle of evidence to show that there was any thing Wee seduction, in the ease. JFor aught that appears, she may have heen as much in fault as the defendant.”
The first proposition, then, viz. that in these cases the bare fact of a criminal intercourse is sufficient to justify exemplary damages, is not warranted by any principle, or any adjudged case. With reference to the second proposition, viz. that the bare fact of a criminal intercourse entitles the master, who, at the time of the intercourse, had a right to the services of the female servant which has been impaired by that act, to recover compensation for the impairment of that right, and' for such expenses as he legitimately incurred and was legally liable for, I think it is cor *156 rect, but in addition to the difficulty that the judge’s attention was not called to this point, and no request was made to him to submit the case to the jury in this aspect, there is another; the services lost were of the most trivial character, and would call for but nominal damages. Indeed no evidence of their value was offered. Judgments áre not reversed to enable a recovery of but nominal damages. If, then, the plaintiff is not entitled to recover for the expenses which he offered to prove, it would be improper to reverse the judgment for an error in not submitting it to the jury in ■ this aspect, even if the judge had been requested so to submit it.
This leads to the last exception remaining to be noticed, which is to the exclusion of the answer to the question, “ State the amount paid by the plaintiff in consequence of the illness of his daughter arising from her intercourse with the defendant ? ” When these expenses were incurred, the daughter was over twenty-one years of age. Therefore, under the proof in this case, there rested no legal obligation on the plaintiff to incur these expenses. He cannot, by voluntarily taking upon himself a duty not imposed by law, cast upon the defendant a burden which otherwise he would not have to bear.
But at the time the question was asked, the evidence was admissible in another point of view. Proof had been given tending to show a seduction of the daughter by the defendant. It could not then be told how the jury would find on the question of a seduction. All evidence, then, properly admissible on the assumption of there having been seduction, should have been received. Eow, as in the event of the jury finding that there was seduction, they had a right to inflict on the defendant exemplary damages, all evidence which would tend to furnish data for such damages should be received. It certainly is proper that a seducer' should pay lying-in expenses, as well as those of medical attendance. And when these are paid by the parent or master, *157 that fact, and the amount of the expenses, should certainly form an item in the exemplary damages given, as well as the injury done to the girl, the disgrace brought on her or her family, or the laceration of the feelings of the parent or those standing in loco parentis.
I think, therefore, there was error in excluding this testimony. But since the jury, after the question of seduction had been fairly put to them, found that there was no seduction, the error has become immaterial. The proposed evidence had not, and could not have, the slightest bearing on the question of seduction, upon which alone the jury rendered this verdict. As these expenses were not recoverable except in case of seduction, and as the jury has found there was no seduction, upon which finding the testimony offered could not possibly have exerted any influence, the error in excluding it has become immaterial, and the judgment should not be reversed therefor.
Judgment affirmed, with costs.